# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MALCOLM TANDY LAMON STROUD,<br><br>Plaintiff,<br><br>v.<br><br>TED PRUITT, et al.,<br><br>Defendants. | Case No. 1:17-cv-01659-BAM (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS<br><br>**FOURTEEN-DAY DEADLINE** |

Plaintiff Malcolm Tandy Lamon Stroud ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action under 42 U.S.C. § 1983. On May 22, 2018, the Court screened Plaintiff's complaint and granted leave to amend. (ECF No. 14.) Plaintiff's first amended complaint, filed on July 27, 2018, is currently before the Court for screening. (ECF No. 17.)

**I.  Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary

1

relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b); 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss, 572 F.3d at 969.

**I.     Plaintiff's Allegations**

Plaintiff is currently housed at the R. J. Donovan Correctional Facility in San Diego, California. The events in the complaint are alleged to have occurred while Plaintiff was housed at the California Substance Abuse Treatment Facility ("CSATF") in Corcoran, California. Plaintiff names the following defendants in their individual capacities: (1) Ted Pruitt, Prison Industry Authority Work Supervisor; (2) Jack Smith, Prison Industry Authority Work Supervisor; and (3) Nick Maloy, Prison Industry Authority Superintendent II. The Prison Industry Authority, sometimes known as "CALPIA" or "PIA," is an entity within the California Department of Corrections and Rehabilitation that employs prisoners in agricultural and industrial positions. Cal. Gov't Code §§ 12838(a), 12838.6; Cal. Penal Code §§ 2701, 2800, 2805.

Plaintiff alleges that she was sexually harassed by her boss, Defendant Pruitt, on more than one occasion, while on the job at PIA. Plaintiff complains that she was subjected to countless sexual innuendos, vulgar and explicit sexual comments, and continual, unwanted sexual

advances, and was sexually assaulted by Defendant Pruitt on more than one occasion. She was subjected to unwanted touching, groping and fondling, including Defendant Pruitt grinding/pushing/pumping his erection on her back on more than one occasion. Plaintiff asserts that she suffered every day until she quit working.

Due to these events, Plaintiff asserts that she is under a doctor's care and suffers from hypertension, high blood pressure, stress, depression, anxiety and post traumatic stress disorder. Plaintiff claims that she is now afraid to work for any staff without an officer being present and she also is afraid of continuing her transition into a woman, fearing she will be at greater risk of sexual assault. She has refused hormone treatment and stopped the process of redirect surgery despite her doctor's recommendations and requirement for treatment.

During the time of the alleged incidents, Plaintiff was considered to be an openly gay/homosexual flamboyant inmate. She currently identifies as a transgender person and has been diagnosed with gender dysphoria. Plaintiff would like the sex relocation surgery to become a woman, but she continues to suffer from the incidents.

Plaintiff explains that she started working in PIA in February or early March 2014. Defendant Pruitt was Plaintiff's boss. On more than one occasion, Defendant Pruitt would wink at Plaintiff and stroke her hand when he would pass out IDs at the end of the work day. Plaintiff thought it was flattering until some of the other openly gay or transgender inmates warned her that Defendant Pruitt was a little touchy feely and had priors for unwanted touching, inappropriate behavior, misconduct and sexual harassment.

Plaintiff continued to do her job by being polite and doing as instructed. She was given raises according to her work performance and was promoted to clerk in February or March 2015 by the inmate assignment lieutenant. Defendant Pruitt was no longer working in the shop. He was out on leave and it was said that he was unlikely to come back. Plaintiff accepted the clerk position only because she thought Defendant Pruitt would not come back.

Defendant Smith was a new hire and was reported to be taking over Defendant Pruitt's spot. Upon his hiring, Defendant Smith made it clear that he knew all the games and tricks because his dad was an Ad-Seg Lieutenant at Corcoran State Prison for 20 years. Defendant

Smith boasted that his dad knew everyone and was well connected throughout the California Department of Corrections and Rehabilitation ("CDCR"). Defendant Smith uses this to intimidate inmates and to read confidential materials.

When Plaintiff was hired and showed Defendant Smith the new work assignment ducat, Defendant Smith responded, "I guess the assignment office got it right, by killing two birds with one stone, since you are black and gay." (ECF No. 17 at 6.) Plaintiff said, "If that's a joke, I'm not laughing, I don't appreciate being degraded or belittled due to my race or sexuality, I earned this position because I'm most qualified and it's all about equal opportunity of employment these days." (Id.)

From that point forward, Defendant Smith allegedly sought to fire Plaintiff or make her quit by making her job a living nightmare. Plaintiff contends that Defendant Smith would scrutinize Plaintiff's work performance beyond professional norms. Defendant Smith made degrading comments to Plaintiff, using homophobic slurs such as "Fagot, Queer, Homo." (Id.) Defendant Smith told Plaintiff to quit on more than one occasions because he despised her and hated her kind. Defendant Smith reportedly refused to hire any homosexual or transgender inmates. Plaintiff was forced to quite when Defendant Smith began to falsify reasons to fire her, and became more physically aggressive to Plaintiff, including making up excuses to search her every day for alleged contraband, despite Plaintiff being stripped search every day to return to her housing unit. Defendant Smith was admonished by custody officers for searching plaintiff or any inmate, explaining that Defendant Smith should not be performing body searches of inmates. Plaintiff was never found to have any contraband and never received a disciplinary write up for contraband.

Plaintiff alleges that she was falsely accused of having contraband as a means to discriminate against her and to humiliate her in the shop by causing her to be searched. Plaintiff alleges that Defendant Smith never searched any other inmate. Plaintiff further alleges that Defendant Smith sexually harassed her with vulgar comments, homophobic slurs and inappropriate sexual gestures.

Defendant Pruitt returned in May 2015 to his regular position as PIA work supervisor. He

4

was senior to Defendant Smith and became Plaintiff's direct boss. Upon learning that Plaintiff was now a clerk, Defendant Pruitt gave Plaintiff a squeeze on the shoulder with a sheepish grin and said, "It'll be fun working with ya." (ECF No. 17 at 9.) Plaintiff felt extremely uncomfortable and fearful because of how Defendant Pruitt made the statement and the look in his eyes.

Plaintiff alleges each of day of her employment with Defendant Pruitt, he found a way to inappropriately touch or sexually assault her. Defendant Pruitt would lean over Plaintiff and point to something on the computer screen as an excuse to push his erection against her back. Plaintiff asserts that every single day was filled with unwanted sexual innuendo or comments. Defendant Pruitt also would call Plaintiff to give her some paperwork. He would hold the paperwork in his crotch and force Plaintiff to grab it.

Plaintiff also alleges that in June or July 2015, there was a conference call between Defendants Maloy, Pruitt, Smith, Plaintiff, J. Barkus and a computer programmer in Sacramento, California. After the call, Defendant Pruitt requested that Plaintiff teach him the new computer functions. Plaintiff trained everyone on the new system, and it took her only 6 to 10 days to properly train an individual. However, Plaintiff alleges that it took approximately 8 weeks to properly train Defendant Pruitt. Plaintiff claims that Defendant Pruitt wanted her close, so he could touch her and coerce her for sexual favors.

Plaintiff contends that Defendant Pruitt would often tell her that there was nothing wrong with being gay and not to be afraid as he would caress her hand and look lustfully into her eyes. Defendant Pruitt also would request oral sex from Plaintiff, saying she could get under his desk and no one would see her. Defendant Pruitt reportedly made some kind of sexual advancement, sexual innuendo or sexual comment to Plaintiff every day. He also would find a way to touch her inappropriately or press up against her with erections despite Plaintiff's objections.

On September 3, 2015, Defendant Smith allowed Plaintiff and several other inmates to leave work in order to see their counselors. Plaintiff went straight to her counselor's office and waited in line for her turn. Plaintiff began talking to some of the other transgender inmates while she waited to see her counselor. Plaintiff was on the yard for approximately 15 minutes when she

was ordered to return to work. The other inmates were not ordered back to work. Plaintiff complains that she was targeted and discriminated against because of her sexual orientation and there was no reason to call her off of the yard.

When Plaintiff returned to work, Defendant Smith was waiting. Plaintiff claims he was calling her back as if she had done something wrong and to justify taking her pay number. Plaintiff received no disciplinary actions for going to see her counselor and no inmates lost their pay numbers for it or had their pay reduced without warning. Plaintiff claims that she lost her pay without any prior wrongdoing, infractions or disciplinary write-ups. She also was not given a warning. Defendant Smith reported told Plaintiff that she "shouldn't be hanging out with Fags." (ECF No. 17 at 12.) Because Defendant Smith went on vacation, Plaintiff confronted Defendant Pruitt about the pay. Plaintiff contends that Defendant Pruitt tried to use this to coerce Plaintiff into sexual favors by telling Plaintiff that she needed to be a team player.

Plaintiff claims that she went to Defendant Maloy on more than one occasion regarding the discrimination and homophobic slurs by Defendant Smith, but Defendant Maloy failed to do anything about it and failed to remedy the situation. Plaintiff claims that Defendant Maloy was aware of the homophobic culture in the shop and the sexual harassment, but did nothing to stop it, prevent it or report it. Plaintiff claims that Defendant Maloy neglected to perform his duties as Superintendent.

Defendant Pruitt subsequently gave Plaintiff a raise in an alleged attempt to entice Plaintiff to perform sexual favors. Plaintiff continued to decline his advances, but Defendant Pruitt became more aggressive, telling Plaintiff that she owed him.

Plaintiff attempted to get a job change on more than one occasion but was refused. Defendant Pruitt would not allow the change or allow Plaintiff to move out of the shop. Defendant Pruitt allegedly would claim he was friends with lots of correctional officers, including the Warden, and could make anything happen.

On November 25, 2015, Defendant Pruitt began to perform body searches on Plaintiff, claiming to be checking for contraband. Plaintiff asked why Defendant Pruitt needed to search him when he was required to be strip searched by correctional officers when leaving PIA.

Defendant Pruitt told Plaintiff to do as she was told, or she would receive an RVR 115 for failure to follow a direct order. Plaintiff contends that Defendant Pruitt used these searches as an opportunity to grope Plaintiff on the ass. Plaintiff was searched again on November 30, December 2, December 3 and December 4, 2015, but no contraband was found. When Defendant Pruitt requested that Plaintiff remove his shirt on December 8, 2015, Plaintiff refused and reported him to PIA custody officers. Defendant Pruitt followed plaintiff to the strip shack, where he watched Plaintiff get strip searched. Plaintiff asked if Defendant Pruitt had a right to search her, and they said no. Plaintiff received an RVR 115 for failure to follow a direct order for refusing to remove his shirt. Plaintiff was found guilty of the RVR.

On December 9, 2015, Plaintiff refused to go to work. Officer Naismith, the control booth officer, asked Plaintiff why she was not going to work. Plaintiff told him that Defendant Pruitt was a pervert and she would never work in PIA again. Approximately 15 minutes later, Officer Naismith opened Plaintiff's door and told her that Defendant Pruitt wanted to talk to her. Officer Naismith allegedly was a friend of Defendant Pruitt.

Plaintiff reported to work exchange and requested that officers escort him to speak with Defendant Pruitt because Plaintiff was afraid. The officers escorted Plaintiff to the PIA supervisor's office where Plaintiff confronted Defendant Pruitt in front of both officers. Defendant Pruitt denied everything, including calling for Plaintiff. Defendant Pruitt wrote Plaintiff a RVR 115 for refusing to work. Plaintiff again was found guilty of the RVR by one of Defendant Pruitt's friends.

During the months of alleged harassment, Plaintiff confided in her family, psych and co-workers. Inmate Markham encouraged Plaintiff to report Defendant Pruitt and went to Officer Radcliff on Plaintiff's behalf. Officer Radcliff told Plaintiff that she needed to come forward if she wanted something done and to prevent it from happening to others.

On December 9, 2015, Plaintiff spoke to her psych about everything. The psych told Plaintiff's counselor, Ms. Hernandez, who called Plaintiff to her office and said, "Really, a big boy like you, being sexually harassed by free staff! I find that hard to believe." (ECF No. 17 at 17.) Officer Naismith was listening to the conversation. Plaintiff said it was because of her that

7

people like Plaintiff were afraid to come forward and it allowed predators to prey on the innocent. Ms. Hernandez replied that nobody in prison is innocent.

After Plaintiff returned to her cell, Officer Naismith told Plaintiff to report to Lt. Iverson in the program office. As Plaintiff left, Officer Naismith claimed Plaintiff was a liar. Plaintiff reported to the program office where he was interrogated by Lt. Iverson. Lt. Iverson did a Prison Rape Elimination Act assessment and told Plaintiff that he no longer had to go to work. However, Plaintiff was still found guilty of failure to work.

As relief, Plaintiff seeks compensatory and punitive damages.

**II.     Discussion**

**A. Eighth Amendment - Sexual Harassment**

Plaintiff's allegations regarding sexual harassment implicate the Eighth Amendment to the United States Constitution. A sexual assault on an inmate by a prison official implicates the rights protected by the Eighth Amendment. Schwenk v. Hartford, 204 F.3d 1187, 1197 (2000); see also Wood v. Beauclair, 692 F.3d 1041, 1046 (9th Cir. 2012); Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir. 1997) ("Sexual abuse may violate contemporary standards of decency and can cause severe physical and psychological harm"). For this reason, severe or repetitive sexual abuse of an inmate by a prison officer can be "objectively, sufficiently serious" to constitute an Eighth Amendment violation. Boddie, 105 F.3d at 861.

While "the Ninth Circuit has recognized that sexual harassment may constitute a cognizable claim for an Eighth Amendment violation, the Court has specifically differentiated between sexual harassment that involves verbal abuse and that which involves allegations of physical assault, finding the later to be in violation of the constitution." Minifield v. Butikofer, 298 F.Supp.2d 900, 904 (N.D. Cal. 2004) (citing Schwenk, 204 F.3d at 1198)). Indeed, the Eighth Amendment's protections do not generally extend to mere verbal sexual harassment. See Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) (finding that incident involving guard that exposed himself to inmate and never physically touched the inmate was not sufficiently serious to constitute an Eighth Amendment violation); Blueford v. Prunty, 108 F.3d 251, 256 (9th Cir. 1997) (affirming summary judgment in favor of prison officials where "the only arguably sexually

harassing conduct… was verbal"); Blacher v. Johnson, 517 Fed.Appx. 564 (9th Cir. 2013) (finding that Eighth Amendment's protections did not extend to mere verbal sexual harassment) (citation omitted). Further, isolated incidents of sexual touching—even when coupled with occasional offensive sexual remarks—do not rise to the level of a constitutional violation. See, e.g., Watison v. Carter, 668 F.3d 1108, 1112–13 (9th Cir. 2012) (where an inmate asserted an officer entered his cell and approached the inmate while he was on the toilet, then rubbed his thigh against the inmate's thigh, "began smiling in a sexual [manner], and left the cell laughing," the allegations were not sufficient to support a violation of the Eighth Amendment).

At the pleading stage, the Court finds that Plaintiff has stated a cognizable claim against Defendant Pruitt based on allegations of repeated incidents of unwanted sexual touching, including unauthorized "searches" for asserted contraband. However, Plaintiff has failed to state a cognizable Eighth Amendment against Defendants Pruitt and Smith based on allegations of verbal sexual harassment. As indicated, allegations of verbal harassment are not sufficient to state a claim under section 1983. Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987). The Court will therefore recommend that this action proceed against Defendant Pruitt based on allegations of physical sexual abuse and the claims for verbal sexual harassment against Defendants Pruitt and Smith be dismissed.

### B. Fourteenth Amendment – Discrimination

Plaintiff appears to assert that Defendants Pruitt and Smith discriminated against her by reducing her pay on more than one occasion because she is a transgender/gay inmate

The Equal Protection Clause requires the state to treat all similarly-situated people equally. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). To prevail on an Equal Protection claim brought under § 1983, a plaintiff must allege facts plausibly showing that "the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." See Thornton v. City of St. Helens, 425 F.3d 1158, 1166 (9th Cir. 2005) (quoting Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001)). Under this theory of equal protection, the plaintiff must show that the defendant's actions were a result of the plaintiff's membership in a suspect class. Id. The Supreme Court has not determined whether

transgender individuals constitute a protected class. See Hampton v. Baldwin, No. 3:18-CV-550-NJR-RJD, 2018 WL 5830730, at *10 (S.D. Ill. Nov. 7, 2018). However, district courts within the Ninth Circuit have recognized that discrimination based on transgender status is actionable under the Equal Protection Clause. McQueen v. Brown, No. 2:15-cv-2544 JAM AC P, 2018 WL 1875631, at *3 (E.D. Cal. Apr. 19, 2018), report and recommendation adopted, No. 2:15-cv-2544 JAM AC P, 2018 WL 2441713 (E.D. Cal. May 31, 2018) (collecting cases); Karnoski v. Trump, No. C17-1297-MJP, 2018 WL 1784464, at *1 (W.D. Wash. Apr. 13, 2018) ("The Court also rules that, because transgender people have long been subjected to systemic oppression and forced to live in silence, they are a protected class.").

Even where state action does not implicate a fundamental right or a suspect classification, the plaintiff can establish an equal protection "class of one" claim by demonstrating that the state actor (1) intentionally (2) treated him differently than other similarly situated persons, (3) without a rational basis. Gerhart v. Lake County Montana, 637 F.3d 1013, 1022 (9th Cir. 2011) (citing Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam)).

At the pleading stage, the Court finds that Plaintiff has pled sufficient facts indicating that the actions of Defendants Pruitt and Smith in docking her pay were motivated by discriminatory intent based on Plaintiff's status as a transgender individual. The Court will therefore recommend that Plaintiff's action proceed against Defendants Pruitt and Smith for discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment.

### C. Supervisory Liability

Insofar as Plaintiff is attempting to sue Defendant Maloy based on his supervisory role, she may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. Iqbal, 556 U.S. at 676–77; Simmons v. Navajo Cty., Ariz., 609 F.3d 1011, 1020–21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir.2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th

Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205–06 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009). Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by Farmer v. Brennan, 511 U.S. 825 (1970).

Here, Plaintiff has failed to establish that Defendant Maloy participated in or directed any constitutional violation or that he implemented a policy so deficient that it was the moving force of any constitutional violation. At best, Plaintiff complained to Defendant Maloy regarding alleged verbal harassment, which does not rise to the level of a constitutional violation. The Court will therefore recommend that Plaintiff's claim against Defendant Maloy be dismissed.

### III.    Conclusion and Recommendation

Based on the foregoing, the Court finds that Plaintiff's amended complaint states a cognizable claim for sexual abuse in violation of the Eighth Amendment against Defendant Pruitt and a cognizable claim for discrimination against Defendants Pruitt and Smith in violation of the Equal Protection Clause of the Fourteenth Amendment. However, Plaintiff's complaint fails to state any other cognizable claims for relief. Despite being provided with the relevant pleading and legal standards, Plaintiff has been unable to cure the deficiencies in her complaint and thus further leave will not be granted. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, the Clerk of the Court is HEREBY DIRECTED to randomly assign a district judge to this action.

Further, it is HEREBY RECOMMENDED that:

1.    This action proceed on Plaintiff's first amended complaint, filed on July 27, 2018, against Defendant Pruitt for sexual abuse in violation of the Eighth Amendment and against Defendants Pruitt and Smith for discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment; and

2    All other claims and defendants be dismissed based on Plaintiff's failure to state claims upon which relief may be granted.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **May 8, 2019**  /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE