# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MALCOLM TANDY LAMON STROUD,<br><br>                  Plaintiff,<br><br>     v.<br><br>PRUITT, *et al.*,<br><br>                  Defendants. | Case No.  1:17-cv-01659-JLT-BAM (PC)<br><br>FINDINGS AND RECOMMENDATION TO DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT RE: EXHAUSTION<br><br>(ECF No. 29)<br><br>**FOURTEEN (14) DAY DEADLINE** |

**FINDINGS AND RECOMMENDATION**

**I.     Background**

Plaintiff Malcolm Tandy Lamon Stroud, aka Treasure Stroud, ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.  This action proceeds on Plaintiff's first amended complaint against Defendant Pruitt for sexual abuse in violation of the Eighth Amendment and against Defendants Pruitt and Smith for discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment.

On December 9, 2019, Defendants filed a motion for summary judgment on the ground that Plaintiff failed to exhaust administrative remedies as required by the Prison Litigation Reform Act.[1]  Fed. R. Civ. P. 56(c), *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en

---

[1] Concurrent with this motion, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment.  *See Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1988); *Klingele v. Eikenberry*, 849 F.2d 409, 411–12 (9th Cir. 1988).  (ECF Nos. 29, 29-1.)

banc), *cert. denied*, 574 U.S. 968 (2014).  (ECF No. 23.)  Following an extension of time, Plaintiff filed an opposition on February 10, 2020.  (ECF Nos. 33, 34.)  Following an extension of time, Defendants filed a reply on February 26, 2020.  (ECF No. 37.)  Plaintiff filed a surreply on April 7, 2020.  (ECF No. 38.)

The motion for summary judgment is deemed submitted.[2]  Local Rule 230(l).

## II.     Legal Standards

### A.     Statutory Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act of 1995 provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion.  *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Albino*, 747 F.3d at 1166.  "In the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)."  *Albino*, 747 F.3d at 1166.  Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust.  *Id.*

Defendants must first prove that there was an available administrative remedy and that Plaintiff did not exhaust that available remedy.  *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing *Albino*, 747 F.3d at 1172) (quotation marks omitted).  The burden then shifts to Plaintiff to show something in her particular case made the existing and generally available administrative remedies effectively unavailable to her.  *Williams*, 775 F.3d at 1191 (citing *Albino*,

---

[2] This motion was dropped inadvertently by the Court's CM/ECF reporting/calendaring system resulting in the prolonged delay in resolution.

2

747 F.3d at 1172) (quotation marks omitted). The ultimate burden of proof on the issue of exhaustion remains with Defendants. *Id.* (quotation marks omitted).

### B. Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); *Albino*, 747 F.3d at 1166; *Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

The defendant bears the burden of proof in moving for summary judgment for failure to exhaust, *Albino*, 747 F.3d at 1166, and he must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," *id.* at 1172. If the defendant carries his burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Id.* at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.*

///
///
///

## III. Discussion

### A. Summary of CDCR's Administrative Review Process

At the relevant time, "[t]he California prison grievance system ha[d] three levels of review; an inmate exhausts administrative remedies by obtaining a decision at each level." *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (citing Cal. Code Regs. tit. 15, § 3084.1(b) (repealed June 1, 2020) & *Harvey v. Jordan*, 605 F.3d 681, 683 (9th Cir. 2010)). *See also* Cal. Code Regs. tit. 15, § 3084.7(d)(3) ("The third level review constitutes the decision of the Secretary of the California Department of Corrections and Rehabilitation on an appeal, and shall be conducted by a designated representative under the supervision of the third level Appeals Chief or equivalent. The third level of review exhausts administrative remedies….") (repealed June 1, 2020).

Pursuant to this system, an inmate may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate . . . can demonstrate as having a material adverse effect upon his . . . health, safety, or welfare." *Id.* at § 3084.1(a).

The process was initiated by submitting a CDCR Form 602, Inmate/Parolee Appeal. *Id.* at § 3084.2(a). In the appeal form, prisoners must list all staff members involved and describe their involvement in the issue. *Id.* at § 3084.2(a)(3). If the inmate does not have the requested identifying information about the staff member, he must provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member in question. *Id.*

### B. Relevant Allegations in First Amended Complaint

Plaintiff is currently housed at the R. J. Donovan Correctional Facility in San Diego, California. The events in the complaint are alleged to have occurred while Plaintiff was housed at the California Substance Abuse Treatment Facility ("CSATF") in Corcoran, California. Plaintiff names the following defendants in their individual capacities: (1) Ted Pruitt, Prison Industry Authority Work Supervisor; and (2) Jack Smith, Prison Industry Authority Work Supervisor. The Prison Industry Authority, sometimes known as "CALPIA" or "PIA," is an entity within the California Department of Corrections and Rehabilitation that employs prisoners in agricultural and industrial positions. Cal. Gov't Code §§ 12838(a), 12838.6; Cal. Penal Code §§ 2701, 2800,

4

2805.

Plaintiff alleges that she was sexually harassed by her boss, Defendant Pruitt, on more than one occasion, while on the job at PIA. Plaintiff complains that she was subjected to countless sexual innuendos, vulgar and explicit sexual comments, and continual, unwanted sexual advances, and was sexually assaulted by Defendant Pruitt on more than one occasion. She was subjected to unwanted touching, groping and fondling, including Defendant Pruitt grinding/pushing/pumping his erection on her back on more than one occasion. Plaintiff asserts that she suffered every day until she quit working.

Due to these events, Plaintiff asserts that she is under a doctor's care and suffers from hypertension, high blood pressure, stress, depression, anxiety and post traumatic stress disorder. Plaintiff claims that she is now afraid to work for any staff without an officer being present and she also is afraid of continuing her transition into a woman, fearing she will be at greater risk of sexual assault. She has refused hormone treatment and stopped the process of redirect surgery despite her doctor's recommendations and requirement for treatment.

During the time of the alleged incidents, Plaintiff was considered to be an openly gay/homosexual flamboyant inmate. She currently identifies as a transgender person and has been diagnosed with gender dysphoria. Plaintiff would like the sex relocation surgery to become a woman, but she continues to suffer from the incidents.

Plaintiff explains that she started working in PIA in February or early March 2014. Defendant Pruitt was Plaintiff's boss. On more than one occasion, Defendant Pruitt would wink at Plaintiff and stroke her hand when he would pass out IDs at the end of the work day. Plaintiff thought it was flattering until some of the other openly gay or transgender inmates warned her that Defendant Pruitt was a little touchy feely and had priors for unwanted touching, inappropriate behavior, misconduct and sexual harassment.

Plaintiff continued to do her job by being polite and doing as instructed. She was given raises according to her work performance and was promoted to clerk in February or March 2015 by the inmate assignment lieutenant. Defendant Pruitt was no longer working in the shop. He was out on leave and it was said that he was unlikely to come back. Plaintiff accepted the clerk

1    position only because she thought Defendant Pruitt would not come back.

2          Defendant Smith was a new hire and was reported to be taking over Defendant Pruitt's
3    spot.  Upon his hiring, Defendant Smith made it clear that he knew all the games and tricks
4    because his dad was an Ad-Seg Lieutenant at Corcoran State Prison for 20 years.  Defendant
5    Smith boasted that his dad knew everyone and was well connected throughout the California
6    Department of Corrections and Rehabilitation ("CDCR").  Defendant Smith uses this to
7    intimidate inmates and to read confidential materials.

8          When Plaintiff was hired and showed Defendant Smith the new work assignment ducat,
9    Defendant Smith responded, "I guess the assignment office got it right, by killing two birds with
10   one stone, since you are black and gay."  (ECF No. 17, p. 6.)  Plaintiff said, "If that's a joke, I'm
11   not laughing, I don't appreciate being degraded or belittled due to my race or sexuality, I earned
12   this position because I'm most qualified and it's all about equal opportunity of employment these
13   days."  (*Id.*)

14         From that point forward, Defendant Smith allegedly sought to fire Plaintiff or make her
15   quit by making her job a living nightmare.  Plaintiff contends that Defendant Smith would
16   scrutinize Plaintiff's work performance beyond professional norms.  Defendant Smith made
17   degrading comments to Plaintiff, using homophobic slurs such as "Fagot, Queer, Homo." (*Id.*)
18   Defendant Smith told Plaintiff to quit on more than one occasions because he despised her and
19   hated her kind.  Defendant Smith reportedly refused to hire any homosexual or transgender
20   inmates.  Plaintiff was forced to quit when Defendant Smith began to falsify reasons to fire her,
21   and became more physically aggressive to Plaintiff, including making up excuses to search her
22   every day for alleged contraband, despite Plaintiff being strip searched every day to return to her
23   housing unit.  Defendant Smith was admonished by custody officers for searching plaintiff or any
24   inmate, explaining that Defendant Smith should not be performing body searches of inmates.
25   Plaintiff was never found to have any contraband and never received a disciplinary write up for
26   contraband.

27         Plaintiff alleges that she was falsely accused of having contraband as a means to
28   discriminate against her and to humiliate her in the shop by causing her to be searched.  Plaintiff

6

alleges that Defendant Smith never searched any other inmate.  Plaintiff further alleges that Defendant Smith sexually harassed her with vulgar comments, homophobic slurs and inappropriate sexual gestures.

Defendant Pruitt returned in May 2015 to his regular position as PIA work supervisor.  He was senior to Defendant Smith and became Plaintiff's direct boss.  Upon learning that Plaintiff was now a clerk, Defendant Pruitt gave Plaintiff a squeeze on the shoulder with a sheepish grin and said, "It'll be fun working with ya." (ECF No. 17, p. 9.)  Plaintiff felt extremely uncomfortable and fearful because of how Defendant Pruitt made the statement and the look in his eyes.

Plaintiff alleges each of day of her employment with Defendant Pruitt, he found a way to inappropriately touch or sexually assault her.  Defendant Pruitt would lean over Plaintiff and point to something on the computer screen as an excuse to push his erection against her back.  Plaintiff asserts that every single day was filled with unwanted sexual innuendo or comments.  Defendant Pruitt also would call Plaintiff to give her some paperwork.  He would hold the paperwork in his crotch and force Plaintiff to grab it.

Plaintiff also alleges that in June or July 2015, there was a conference call between Defendants Pruitt and Smith, Plaintiff, and non-parties Nick Maloy,[3] J. Barkus, and a computer programmer in Sacramento, California.  After the call, Defendant Pruitt requested that Plaintiff teach him the new computer functions.  Plaintiff trained everyone on the new system, and it took her only 6 to 10 days to properly train an individual.  However, Plaintiff alleges that it took approximately 8 weeks to properly train Defendant Pruitt.  Plaintiff claims that Defendant Pruitt wanted her close, so he could touch her and coerce her for sexual favors.

Plaintiff contends that Defendant Pruitt would often tell her that there was nothing wrong with being gay and not to be afraid as he would caress her hand and look lustfully into her eyes.  Defendant Pruitt also would request oral sex from Plaintiff, saying she could get under his desk and no one would see her.  Defendant Pruitt reportedly made some kind of sexual advancement,

---

[3] Nick Maloy was originally named as a defendant in this action but was dismissed for failure to state a claim.  (ECF Nos. 18, 19.)

1  sexual innuendo or sexual comment to Plaintiff every day.  He also would find a way to touch her
2  inappropriately or press up against her with erections despite Plaintiff's objections.
3        On September 3, 2015, Defendant Smith allowed Plaintiff and several other inmates to
4  leave work in order to see their counselors.  Plaintiff went straight to her counselor's office and
5  waited in line for her turn.   Plaintiff began talking to some of the other transgender inmates while
6  she waited to see her counselor.  Plaintiff was on the yard for approximately 15 minutes when she
7  was ordered to return to work.  The other inmates were not ordered back to work.  Plaintiff
8  complains that she was targeted and discriminated against because of her sexual orientation and
9  there was no reason to call her off of the yard.
10        When Plaintiff returned to work, Defendant Smith was waiting.  Plaintiff claims he was
11  calling her back as if she had done something wrong and to justify taking her pay number.
12  Plaintiff received no disciplinary actions for going to see her counselor and no inmates lost their
13  pay numbers for it or had their pay reduced without warning.  Plaintiff claims that she lost her pay
14  without any prior wrongdoing, infractions or disciplinary write-ups.  She also was not given a
15  warning.  Defendant Smith reported told Plaintiff that she "shouldn't be hanging out with Fags."
16  (ECF No. 17, p. 12.)  Because Defendant Smith went on vacation, Plaintiff confronted Defendant
17  Pruitt about the pay.  Plaintiff contends that Defendant Pruitt tried to use this to coerce Plaintiff
18  into sexual favors by telling Plaintiff that she needed to be a team player.
19        Defendant Pruitt subsequently gave Plaintiff a raise in an alleged attempt to entice
20  Plaintiff to perform sexual favors.  Plaintiff continued to decline his advances, but Defendant
21  Pruitt became more aggressive, telling Plaintiff that she owed him.
22        Plaintiff attempted to get a job change on more than one occasion but was refused.
23  Defendant Pruitt would not allow the change or allow Plaintiff to move out of the shop.
24  Defendant Pruitt allegedly would claim he was friends with lots of correctional officers, including
25  the Warden, and could make anything happen.
26        On November 25, 2015, Defendant Pruitt began to perform body searches on Plaintiff,
27  claiming to be checking for contraband.  Plaintiff asked why Defendant Pruitt needed to search
28  her when she was required to be strip searched by correctional officers when leaving PIA.

Defendant Pruitt told Plaintiff to do as she was told, or she would receive an RVR 115 for failure to follow a direct order. Plaintiff contends that Defendant Pruitt used these searches as an opportunity to grope Plaintiff on the ass. Plaintiff was searched again on November 30, December 2, December 3, and December 4, 2015, but no contraband was found. When Defendant Pruitt requested that Plaintiff remove her shirt on December 8, 2015, Plaintiff refused and reported him to PIA custody officers. Defendant Pruitt followed Plaintiff to the strip shack, where he watched Plaintiff get strip searched. Plaintiff asked if Defendant Pruitt had a right to search her, and they said no. Plaintiff received an RVR 115 for failure to follow a direct order for refusing to remove her shirt. Plaintiff was found guilty of the RVR.

On December 9, 2015, Plaintiff refused to go to work. Officer Naismith, the control booth officer, asked Plaintiff why she was not going to work. Plaintiff told him that Defendant Pruitt was a pervert and she would never work in PIA again. Approximately 15 minutes later, Officer Naismith opened Plaintiff's door and told her that Defendant Pruitt wanted to talk to her. Officer Naismith allegedly was a friend of Defendant Pruitt.

Plaintiff reported to work exchange and requested that officers escort her to speak with Defendant Pruitt because Plaintiff was afraid. The officers escorted Plaintiff to the PIA supervisor's office where Plaintiff confronted Defendant Pruitt in front of both officers. Defendant Pruitt denied everything, including calling for Plaintiff. Defendant Pruitt wrote Plaintiff a RVR 115 for refusing to work. Plaintiff again was found guilty of the RVR by one of Defendant Pruitt's friends.

During the months of alleged harassment, Plaintiff confided in her family, psych and co-workers. Inmate Markham encouraged Plaintiff to report Defendant Pruitt and went to Officer Radcliff on Plaintiff's behalf. Officer Radcliff told Plaintiff that she needed to come forward if she wanted something done and to prevent it from happening to others.

On December 9, 2015, Plaintiff spoke to her psych about everything. The psych told Plaintiff's counselor, Ms. Hernandez, who called Plaintiff to her office and said, "Really, a big boy like you, being sexually harassed by free staff! I find that hard to believe." (ECF No. 17, p. 17.) Officer Naismith was listening to the conversation. Plaintiff said it was because of her that

9

people like Plaintiff were afraid to come forward and it allowed predators to prey on the innocent. Ms. Hernandez replied that nobody in prison is innocent.

After Plaintiff returned to her cell, Officer Naismith told Plaintiff to report to Lt. Iverson in the program office. As Plaintiff left, Officer Naismith claimed Plaintiff was a liar. Plaintiff reported to the program office where she was interrogated by Lt. Iverson. Lt. Iverson did a Prison Rape Elimination Act assessment and told Plaintiff that she no longer had to go to work. However, Plaintiff was still found guilty of failure to work.

As relief, Plaintiff seeks compensatory and punitive damages.

### C. Undisputed Material Facts (UMF)[4]

1. At all times relevant to the complaint, Plaintiff Malcolm Tandy Lamon Stroud (E-86711) was a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR") incarcerated at the California Substance Abuse Treatment Facility ("SATF") in Corcoran, California. (First Am. Compl. ("FAC"), ECF No. 17.)
2. Between 2014 and 2016, Plaintiff submitted twelve appeals from SATF. Only two of those appeals (log numbers SATF-14-03664 & SATF-D-15-03844) were accepted for review. (ECF No. 29-4 ("Shaw Decl.") ¶ 4.)
3. SATF-14-03664 was a group appeal that concerned the housing policy on Facility D. This appeal was denied at the second level of review on October 15, 2014. (*Id.* ¶ 5.)
4. SATF-D-15-03844 concerned Plaintiff's alleged inability to practice the House of Yahweh faith due to a lack of space. This appeal was granted at the first level of review on September 3, 2015. (*Id.* ¶ 6.)
5. SATF-D-15-01646 concerned an appeal that was cancelled on February 23, 2015, and was screened out at the second level of review. (*Id.* ¶ 7.)

---

[4] ECF No. 29-2. Plaintiff did not provide a separate statement of undisputed facts with her opposition. Local Rule 260(a). As a result, Defendants' Statement of Undisputed Facts in support of the motion for summary judgment is accepted except where brought into dispute by Plaintiff's verified first amended complaint, (ECF No. 17), and verified declaration in support of her opposition to the motion for summary judgment, (ECF No. 34). *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir 2004) (verified complaint may be used as an opposing affidavit if it is based on pleader's personal knowledge of specific facts which are admissible in evidence; *Johnson v. Melzer*, 134 F.3d 1393, 1399–1400 (9th Cir. 1998) (same, with respect to verified motions). Unless otherwise indicated, disputed and immaterial facts are omitted from this statement and relevant objections are overruled.

6. SATF-D-16-00827 concerned a rules violation report ("RVR"), and was screened out at the second level. The comments in IATS indicate that the appeal concerned an RVR (log number D-15-12-37) for the offense of "Refusing to Work." (*Id.* ¶ 8.)

7. SATF-E-16-01419 concerned two RVRs (D-16-01-0048 and D-16-01053), and was screened out at the second level of review on May 5, 2016. (*Id.* ¶ 9.)

8. SATF-E-16-01736 concerned the cancellation of SATF-D-16-00827, and was screened out at the second level of review on May 26, 2016. (*Id.* ¶ 10.)

9. SATF-E-16-02189 concerned unallowable property items, and was screened out at the first level on May 18, 2016. (*Id.* ¶ 11.)

10. SATF-E-16-02526 concerned a disciplinary issue, and was screened out at the second level on June 15, 2016. (*Id.* ¶ 12.)

11. SATF-E-16-02571 concerned a disciplinary issue, and was screened out at the second level on June 16, 2016. (*Id.* ¶ 13.)

12. SATF-E-16-03050 concerned two issues: the cancellation of appeal 16-2526 and the denial of appeal 16-1419; this appeal was screened out at the second level on August 26, 2016. (*Id.* ¶ 14.)

13. SATF-E-16-03059 concerned the cancellation of more than one appeal, and was screened out at the second level on August 8, 2016. (*Id.* ¶ 15.)

14. SATF-E-16-03789 concerned the cancellation of an appeal and requested the dismissal of RVR 16-01-053; this appeal was screened out at the second level on August 30, 2016. (*Id.* ¶ 16.)

15. The Office of Appeals only received one appeal (institutional appeal log no. SATF-14-03664) from Plaintiff that was accepted and subsequently cancelled at the Third Level of Review from SATF between 2014 and 2016. (ECF No. 29-3 ("Lieu Decl.") ¶ 8.)

16. The Office of Appeals received a second appeal (institutional appeal log no. SATF-15-01646) from Plaintiff that was cancelled because time constraints were not met. (*Id.* ¶ 9.)

17. Other than appeal log nos. SATF-14-03664 and SATF-15-01646, the Office of Appeals did not receive any other appeals submitted by Plaintiff between 2014 and 2016. (*Id.*

¶ 10.)

**D.     Plaintiff's Sur-reply**

Generally, parties do not have the right to file sur-replies, and motions are deemed submitted when the time to reply has expired. Local Rule 230(l). The Court generally views motions for leave to file sur-replies with disfavor. *Hill v. England*, No. CVF05869 REC TAG, 2005 WL 3031136, at *1 (E.D. Cal. 2005) (citing *Fedrick v. Mercedes–Benz USA, LLC*, 366 F. Supp. 2d 1190, 1197 (N.D. Ga. 2005)). However, district courts have the discretion to either permit or preclude a sur-reply. *See U.S. ex rel. Meyer v. Horizon Health Corp.*, 565 F.3d 1195, 1203 (9th Cir. 2009) (district court did not abuse discretion in refusing to permit "inequitable surreply"); *JG v. Douglas County School Dist.*, 552 F.3d 786, 803 n.14 (9th Cir. 2008) (district court did not abuse discretion in denying leave to file sur-reply where it did not consider new evidence in reply); *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (new evidence in reply may not be considered without giving the non-movant an opportunity to respond). In this Circuit, courts are required to afford *pro se* litigants additional leniency. *E.g., Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012); *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *Silva v. Di Vittorio*, 658 F.3d 1090, 1101 (9th Cir. 2011); *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

Here, Plaintiff did not seek leave of Court before filing her sur-reply. However, in light of Defendants' apparent non-opposition and Plaintiff's *pro se* status, the Court will exercise its discretion to not strike the evidence. The Court will consider the evidence presented.

**E.     Discussion**

<p style="padding-left: 2em">1.     <u>Parties' Positions</u></p>

Defendants argue that between 2014 and 2016, Plaintiff submitted twelve appeals at SATF. Only two of those appeals were accepted for review, and the remaining ten were screened out or cancelled. Neither of the two appeals accepted for review were related to the sexual abuse or Equal Protection claims in this action, and Plaintiff did not exhaust any appeals through the third level of review. The only appeal that could be construed as related to the claims in this lawsuit is appeal SATF-D-16-00827, which concerned a RVR for Refusing to Work. However,

an appeal concerning the issuance of a RVR is vastly different in nature from one complaining about sexual harassment, and SATF-D-16-00827 was screened out and cannot serve to exhaust Plaintiff's claims.

In opposition, Plaintiff contends that she should be excused from the exhaustion requirement because her administrative remedies were effectively unavailable. Plaintiff tried to submit appeals for processing but to no avail. Plaintiff submitted her first 602/appeal with a citizen/staff complaint against Defendants for sexual harassment and discrimination, (ECF No. 34, pp. 66–70 (Stroud Decl., Ex. N)), but the appeals coordinator at SATF refused to process the 602 and refused to respond to any inquiry Plaintiff made regarding the appeal, (*id.* at 43–46 (Stroud Decl., Ex. J)). Plaintiff was found guilty of a RVR for Refusing to Work, despite stating that she was being sexually harassed and discriminated against at work. Plaintiff appealed the RVR in SATF-D-16-00827 in hopes of having her sexual harassment claims addressed. SATF-D-16-00827 was screened out, and it was the first of ten consecutive 602/appeals wrongfully screened out in a six-month period by the appeals coordinator, in an attempt to discourage Plaintiff. Plaintiff followed every rule, regulation, procedure, and/or protocol regarding PREA requirements, including reporting to appropriate staff. Plaintiff clearly stated her claims in SATF-D-16-00827 and exercised due diligence in the face of extraordinary circumstances created by the SATF appeals coordinator who refused to process and/or address any 602/appeal by Plaintiff, rendering her attempts to exhaust futile and effectively unavailable.

Defendants reply that Plaintiff's opposition is procedurally defective because she failed to comply with the requirements of Federal Rule of Civil Procedure 56 and Local Rule 260. Even assuming Plaintiff submitted the first appeal on December 8, 2015 and prison staff refused or failed to respond to it, the appeal cannot exhaust her claims in this lawsuit because it does not contain allegations regarding repeated instances of unwanted sexual physical touching or that her pay was reduced because she is transgender. Plaintiff also fails to create a genuine material dispute of fact regarding the availability of the appeals process, because her remaining appeals were properly screened out.

///

In her sur-reply, Plaintiff argues that prison officials were on notice of her sexual harassment and discrimination claims because she submitted numerous 602 appeals regarding sexual harassment and discrimination. Further, she was not required to litigate her claims through the 602/appeal process by including every detail of her sexual harassment/discrimination claim in the December 8, 2015 appeal, as she reported the abuse to other officers and staff, who reported it to their superiors and conducted PREA protocols and multiple interviews. (ECF No. 38, p. 8.) Plaintiff was removed from D-yard and placed on E-yard pending her transfer from SATF due to the PREA investigation and Plaintiff's fears of retaliation. Thus, prison officials were well aware of Plaintiff's claims of sexual harassment and discrimination. Plaintiff further states that after the Appeals Office refused to provide her with a log # for the December 8, 2015 appeal, she was afraid of not being able to document her sexual harassment and discrimination claim, so she relied on gamesmanship by stipulated and re-asserting her claim in SATF-D-16-00827, stating in part "I was being sexually harassed at work." However, the appeal was wrongfully screened out in hopes of silencing Plaintiff, first containing ambiguous instructions, and again as exceeding time constraints.

       2.  <u>SATF-D-16-00827</u>

Appeal log no. SATF-D-16-00827 did not exhaust Plaintiff's administrative remedies for the claims in this action. The appeal was screened out at the second level, and Plaintiff's appeal of that cancellation was also screened out at the second level. UMF 6, 8. Thus, the appeal never reached the third level of review.

Even if the appeal had been improperly screened out, the substance of the appeal was overturning Plaintiff's RVR conviction, not the sexual abuse and discrimination claims in this suit. UMF 6. Plaintiff's contention that she stated in the appeal that she was sexually harassed by Defendants at work, and therefore this appeal also included her underlying sexual harassment claim, is unavailing. The only action requested by the appeal is dismissal of the RVR and restoration of Plaintiff's credits, and the crux of the appeal is Plaintiff's contention that the RVR was unwarranted. (ECF No. 34, pp. 48, 50.)

///

3.     Improperly Screened Out Appeals

Improper screening of an inmate's administrative grievances can be sufficient to render administrative remedies effectively unavailable such that exhaustion is not required under the PLRA. *Sapp v. Kimbrell*, 623 F.3d 813, 832 (9th Cir. 2010). To fall within this exception, Plaintiff must establish that a grievance would have sufficed to exhaust her claims in this suit and that the grievance was screened out for reasons inconsistent with or unsupported by applicable regulations. *Id.* at 823–24.

The fact that ten out of Plaintiff's twelve appeals during the relevant period were screened out is not, on its own, sufficient to demonstrate that Plaintiff's administrative remedies were effectively unavailable. UMF 2. Plaintiff submits no evidence, other than her own conclusory statements, that any of the ten appeals was improperly screened out. Moreover, aside from SATF-D-16-00827, addressed above, it is undisputed that the other nine screened out appeals did not raise any of the claims at issue in this action. UMF 5–14.

4.     December 8, 2015 Appeal

Plaintiff declares under penalty of perjury that on December 8, 2015, she submitted a 602 and a staff complaint regarding her claims in this action, and never received a log number or a response from the appeals coordinator. (ECF No. 34, pp. 8, 66–70.) Plaintiff submitted multiple CDCR 22 forms to the appeals coordinator inquiring about the status of that appeal. (*Id.* at 8, 43–46.)

Despite having the opportunity to do so in their reply brief, Defendants do not present any evidence to dispute Plaintiff's declaration and supporting documents regarding submission of the December 8, 2015 appeal. Although Defendants contend that they "presented evidence that Plaintiff did not submit any appeals that were accepted for review concerning Defendants' alleged conduct in this lawsuit," (ECF No. 37, p. 3), they do not address Plaintiff's evidence that she submitted multiple later inquiries into the status of the December 8, 2015 appeal, which also received no response. While there is no documentation, aside from Plaintiff's declaration, that the December 8, 2015 was submitted or received, each of Plaintiff's CDCR 22 Requests for Interview regarding the status of her appeal are signed and dated by correctional staff. (ECF No.

15

1  34, pp. 44–46.) Defendants do not address whether these requests were appropriately forwarded
2  to the inmate appeals coordinator or whether any staff response was ever returned to Plaintiff.
3  Instead, Defendants argue only based on an assumption of the truth of Plaintiff's claim. (ECF
4  No. 37 at 3:22–23, 5:15, 6:8–9.)

5  Defendants' failure to submit evidence to rebut Plaintiff's sworn declaration and evidence
6  that her relevant appeal was never properly processed, even combined with the assertion that
7  Plaintiff did not submit any relevant appeals that were accepted for review, is not sufficient to
8  create a material dispute of fact as the unavailability of Plaintiff's administrative remedies. As
9  such, the Court accepts as true that Plaintiff submitted the appeal on December 8, 2015, and
10 received no response to the appeal or to her later inquiries regarding its status. Therefore, it is
11 undisputed that Plaintiff submitted an appeal on December 8, 2015, and that prison officials
12 improperly failed to process or otherwise respond to the grievance, rendering Plaintiff's
13 administrative remedies unavailable. *See Andres v. Marshall*, 867 F.3d 1076, 1079 (9th Cir.
14 2017).

15 The Court finds unpersuasive Defendants' argument that the December 8, 2015 appeal
16 could not serve to exhaust Plaintiff's claims in this action. The appeal states that Defendants
17 Pruitt and Smith subject Plaintiff to sexual harassment and discrimination, specifying: "First it
18 was just derogatory statements & use of obscene language by the both of them, then it went to
19 sexual innuendos & unwelcomed advancements by T. Pruitt and ended with them both trying to
20 strip search me." (ECF No. 34, pp. 67–68.) Plaintiff recounts multiple instances of searches by
21 Defendant Pruitt, who accused Plaintiff of having contraband. (*Id.* at 68.) Plaintiff eventually
22 told Defendant Pruitt that she would only submit to an officer searching her, since she had to
23 walk through work exchange where inmates were already strip searched. Defendant Pruitt
24 escorted Plaintiff to work exchange where she was strip searched, and Defendant Pruitt stayed to
25 watch her strip. (*Id.*) In the citizens complaint submitted together with the appeal, Plaintiff
26 further states: "First I only had to endure derogatory statements, obscene language and sexual
27 innuendos, but now they are causing humiliation, degrading me and looking at my body. They
28 use their power as my boss to intimidate me specifically my pay number and if I don't comply

1 | then they reduce my pay.  They make up reasons to reduce my pay but I never received any
2 | disciplinary action nor have they ever removed me from my actual job position 'clerk.'" (*Id.* at
3 | 69–70.)

      These allegations were sufficient to place prison officials on notice of Plaintiff's claims regarding sexual abuse by Defendants.  Although the appeal does not include the level of detail found in the first amended complaint regarding physical conduct, Plaintiff is correct that she is not required to litigate her claims in the appeals process, but only to alert the prison to the "nature of the wrong for which redress is sought." *Sapp*, 623 F.3d at 824.  At screening, the Court found that Plaintiff stated a cognizable claim for sexual abuse in violation of the Eighth Amendment based on Plaintiff's "allegations of repeated incidents of unwanted sexual touching, <u>including unauthorized 'searches' for asserted contraband</u>." (ECF No. 18, p. 9 (emphasis added).)  Plaintiff's appeal alleges multiple instances of strip searches for contraband, as well as "sexual innuendos & unwanted advancements by T. Pruitt," (ECF No. 34, p. 68), the same type of conduct that the Court found stated a cognizable claim.

      Similarly, although Defendants argue that the December 8, 2015 appeal does not mention pay or reduced pay, in the pages attached to the appeal Plaintiff specifically states that Defendants made up reasons to reduce her pay if she did not comply with the strip searches.  (ECF No. 34, p. 70.)  This was sufficient to place prison officials on notice of Plaintiff's Equal Protection claims regarding Defendants docking her pay.

      Accordingly, the Court finds that Plaintiff submitted an appeal on December 8, 2015, placing prison officials on notice of her sexual abuse and discrimination claims against Defendants, but prison officials failed to process or otherwise respond to that grievance.  Plaintiff is therefore deemed to have exhausted her available administrative remedies.

**IV.   Recommendation**

      Based on the foregoing, IT IS HEREBY RECOMMENDED that Defendants' motion for summary judgment for failure to exhaust, (ECF No. 29), be DENIED.

      These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within

**fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 26, 2024**           /s/ Barbara A. McAuliffe
                                         UNITED STATES MAGISTRATE JUDGE